**Bettye M. TWITTY, Plaintiff-Appellant,**

v.

**STATE FARM LIFE INSURANCE COMPANY, Defendant-Appellee.**

No. 73-2251.

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1974.

---

Sherman A. Kusin, Harry B. Friedman, Ralph J. Blagg, Texarkana, Tex., for plaintiff-appellant.

William L. Peek, Jr., Texarkana, Tex., for defendant-appellee.

Before BROWN, Chief Judge, and GODBOLD and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Bettye Twitty appeals from the judgment entered on a directed verdict granted by the District Court Judge in favor of Insurer, State Farm Life Insurance Company, in her suit to collect the benefits of a policy on the life of Assured, her husband James E. Twitty. At the close of her evidence, the trial judge ruled that there was insufficient evidence that the lapsed policy had been reinstated to permit the case to go to the jury. We affirm this decision.

Bettye Twitty was the business manager of the trucking company owned by her and her husband. More educated than her husband, she had been responsible for maintaining their personal and business insurance for a number of years. On May 27, 1970 she applied for a $100,000.00 insurance policy #2088313 on her husband's life from W. F. Cockrell, agent for Insurer.

The premiums were paid until early 1971 when the policy lapsed for the first time. In May of that year she asked agent Cockrell to reinstate the policy, paid the full delinquent premium, $625.-00, and signed the Insurer's reinstatement application form that included questions relating to Assured's health. These materials were forwarded by Agent Cockrell to Insurer and the policy was reinstated.

Business in the Twitty trucking operation was seasonal and the policy lapsed again on January 17, 1972. Five months later when Mrs. Twitty went to see Cockrell to make other insurance payments, she spoke to him concerning the life insurance. The conversation as recounted by Agent Cockrell in his deposition (readopted in his trial testimony) is the heart of the case. He said: "'Mrs. Twitty, while you're here, we need to get this life insurance back in force.' And she said, 'Okay,' she said, 'How much money do you need?' And I said, "Two hundred dollars ($200.00),' and she wrote me a check for two hundred dollars." [1]

1. This sum was substantially less than the approximately $1,601.56 back premium owed on the policy. This sum, not supplied by either counsel, was computed by multiplying the monthly premium $312.50 by the five months between the lapse date, January 17, and the date of her attempted reinstatement, June 15, plus a pro rata portion of the interest (6% per annum) as represented by the lapse. We have computed this sum to illustrate the substantial difference in the amount actually paid by Mrs. Twitty and the amount actually owed.

During this "second reinstatement" Bettye Twitty signed only the $200.00 check and a blank application, one similar in physical appearance, color and content to the application for reinstatement she had signed before in May[2] 1970. But, instead of a form described as a Reinstatement Application, this was described on its face as a Life Application. Cockrell again, however, appears to have completed by hand himself the part of the application pertaining to the health of the insured. Cockrell contends that at this time she was given a binding receipt and forms to be completed by the family physician, the sort that usually accompany the issuance of a new policy.

James E. Twitty died two weeks later on June 29, 1972. The following morning Cockrell sent the application and check to the company. The binding receipt on the second life insurance policy did not authorize recovery for the type of occurrence that caused Twitty's death.[3] The parties are now before this Court disputing whether the "second reinstatement" transaction reactivated the $100,000.00 life insurance policy # 2088313.

"In view of the fact that she paid only $200.00, $1,400.00 less than needed under the reinstatement clause of the policy,[4] the question is whether the Agent had the power to waive or alter that premium in the face of the policy provision that forebade anyone other than special officials of the insurer to change, make or waive any rights of the company.[5] In addition to these waiver limitations in

---

2. The questions concerning the health of the insured contained in both forms are almost identically worded, comprising questions 2–e to 7 (Reinstatement Application) and 8(a–j)–10 (Life Application).

3. The litigants have agreed that this second policy is not in any way at issue in this case.

4. *Reinstatement.* This policy may be reinstated within five years after the date of lapse if it has not been surrendered for its cash surrender value. Reinstatement is subject to (1) the payment of all overdue premiums with compound interest at the rate of six per cent per annum on such overdue premiums; (2) the payment or re-establishment of any indebtedness existing at the date of lapse together with compound interest at the rate of six per cent per annum on such indebtedness; and (3) receipt of evidence of insurability of the Insured satisfactory to the company.

5. The policy provided:
Only an endorsement signed by the president, a vice-president, the secretary, or an assistant secretary of the company can waive or modify the conditions or provisions of this policy. No other person has the authority to make or modify this contract, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise or representation or by giving or receiving any information.
Similar limitations were also included in the application for reinstatement.
To the best of my knowledge and belief all statements, answers, representations and agreements in this reinstatement application, and in the original application for the policy, are represented to be true, complete, and correctly recorded. No material circumstance or information has been withheld or omitted concerning the past and present state of health, habits of life and occupation of the Proposed Insured or any other person insured under this policy. On behalf of the Proposed Insured, the Applicant, if other than the Proposed Insured, and any person who shall have any interest in a policy which may be reinstated pursuant hereto, it is agreed: (1) That this reinstatement application, any action hereon, or any lapse of time, shall not be considered to effect a reinstatement by waiver or estoppel, and that the company shall not be deemed to have approved reinstatement unless an official company Notice of Reinstatement is issued; and (2) that no one except the president, a vice-president, the secretary, or an assistant secretary has the power on behalf of the company to make, modify, or discharge contracts or to waive any of the company's rights or requirements (and in writing only), and these powers will not be delegated. The soliciting agent is not authorized to accept risks or to pass upon insurability. Notice to or knowledge of the soliciting agent is not notice to or knowledge of the company.
So far as may be lawful, all provisions of law forbidding any physician or other person who has attended or examined or who may attend or examine the Proposed Insured and any other person insured under this policy from disclosing any knowledge or information which he thereby acquired are expressly waived.

the contract, plaintiff must surmount the statutory limitation in the Texas Insurance Code § 21.04, V.A.T.S. denying to soliciting life insurance agents the authority to waive policy conditions. These statutory and contractual limitations on the powers of the agent were clearly the substance of Insurer's case. In order to reverse the judgment, we must find that agent Cockrell had the authority, despite these provisions, to waive the rights of the company to the full back premium—whether he intended to do so or not—and to revive the original insurance coverage.

Appellant argues that Cockrell had this legal capability because he was a local recording agent rather than an insurance solicitor. This difference is important in Texas insurance law because it distinguishes agents with more plenary powers to write, execute and bind the companies to a risk—local recording agents—from agents who are only empowered to forward proposed risks to the company for acceptance—soliciting agents.[6] These broad statutory powers of the recording agent have led the Texas courts to impute to such agents the additional power to waive policy terms despite express policy provisions denying such apparent authority.[7] Appellant builds her case directly on these Texas decisions,[8] and without a doubt, were those cases applicable, they would compel a reversal of this case.

But the trouble with her reliance on these cases is that by their reasoning, they are confined under the Texas Insurance Code only to casualty and fire insurance underwriting and not to the life insurance business.[9] The Texas Insurance Code clearly demarks the scope of authorized activities of the individual insurance specialties permitted by the state legislature. Texas law distinguishes carefully between life insurance and casualty and fire underwriters. It has an elaborate system for the licensing of those people engaged in each of the two activities but these licensing provisions are separate. Under that for fire and casualty—and these may be written by companies that may be affiliated with life insurance companies but remain separate underwriters—the two previously noted classes of agents exist for casualty underwriting.[10] However,

---

6. Tex.Ins.Code Ann. art. 21.14, § 2 (1963).

7. This additional statutory authority has been explained on the basis that "an insurance corporation cannot thus limit its power subsequently to contract in any lawful manner by and through its authorized agents acting within the scope of their authority." Home Ins. Co. of N. Y. v. Roberts, 129 Tex. 178, 100 S.W.2d 91, 93 (Tex. Comm'n App. 1937, opinion adopted).

8. Morrison v. Insurance Company of North America, 69 Tex. 353, 6 S.W. 605, 608 (1887), Home Ins. Co. v. Roberts, 129 Tex. 178, 100 S.W.2d 92, 93 (Tex.Comm'n App. 1937, opinion adopted).

9. This issue—whether Texas life insurance agents have recording agent characteristics and powers—was not closely argued in the original briefs or on oral argument. Not wanting to trust solely to our own research on an unargued point, we requested supplemental briefs from counsel on the issue. While appellant was not able to cite statutory waiver powers for life agents, she suggested several Texas cases as support for

her argument. We disagree. Provident Life & Accident Ins. Co. v. Flowers, 91 S.W.2d 847 (Tex.Civ.App.—El Paso, 1936, writ dism'd) and Adams v. LaSalle Life Ins. Co., 99 S.W.2d 386 (Tex.Civ.App.—Waco, 1936, no writ) both involve the imputation of a life agent's knowledge to the Insurer, not a waiver. Similarly inapplicable is Security Ben. Ass'n v. Woods, 45 S.W.2d 409 (Tex. Civ.App.—El Paso, 1932, no writ). There the Court found waiver from actions of the Insurer itself, not the Agent alone.

10. Tex.Ins.Code Ann. art. 21.14, § 2 (1963) defines their powers.
    *Definitions; Certain Orders, Societies or Associations Not Affected.*—By the term "Local Recording Agent" is meant a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company or insurance carrier, including fidelity and surety companies, to solicit business and to write, sign, execute, and deliver policies of insurance, and to bind companies on insurance risks, and who maintain an office and a record of such business and the transactions which

the life insurance business is expressly excluded from this provision.[11] The provisions of the Texas Insurance Code relating to life insurance agents make no such distinctions in the scope of the individual agent's powers.[12] A class of soliciters is the only one mentioned and, in addition, their authority to waive policy provisions [13] is circumscribed by statute.

are involved, who collect premiums on such business and otherwise perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public; or a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company or insurance carrier, including fidelity and surety companies, to solicit business, and to forward applications for insurance to the home office of the insurance companies and insurance carriers, where the insurance company's and insurance carrier's general plan of operation in this State provides for the appointment and compensation of agents for insurance and for the execution of policies of insurance by the home office of the insurance company or insurance carrier, or by a supervisory office of such insurance company or insurance carrier, and who maintain an office and a record of such business and the transactions which are involved, and who collect premiums on such business and otherwise qualify and perform the customary duties of a local recording agent representing an insurance carrier in its relation with the public.

By the term "Solicitor" is meant a person who is a bona fide solicitor in the office of, and engaged in the business of soliciting insurance on behalf of a local recording agent, and who offices with such local recording agent, and who does not sign and execute policies of insurance, and who does not maintain company records of such transactions. This shall not be construed to make a solicitor of a local recording agent, who places business of a class which the rules of the company or carrier require to be placed on application or to be written in a supervisory office.

11. Tex.Ins. Code Ann. art. 21.14, § 20 (1963) reads as follows:

*Life, Health and Accident Insurance, Inapplicable to; Other Exceptions.*—No provisions of this article shall apply to the Life, Health and Accident Insurance business or the Life, Health and Accident Department of the companies engaged therein * * *.

12. Tex.Ins.Code Ann. art. 21.02 (1963).

*Who Are Agents*

Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. The provisions of this subchapter shall not apply to citizens of this State who arbitrate in the adjustment of losses between the insurers and insured, nor to the adjustment of particular or general average losses of vessels or cargoes by marine adjusters who have paid an occupation tax of Two Hundred ($200.-00) Dollars for the year in which the adjustment is made, nor to practicing attorneys at law in the State of Texas, acting in the regular transaction of their business as such attorneys at law, and who are not local agents, nor acting as adjusters for any insurance company. Any person who shall do any of the acts mentioned in this article for or on behalf of any insurance company without such company having first complied with the requirements of the laws of this State, shall be personally liable to the holder of any policy of insurance in respect of which such act was done for any loss covered by the same. Acts 1951, 52nd Leg., ch. 491.

13. Tex.Ins.Code Ann. art. 21.04 (1963).

*Solicitor Deemed Company's Agents*

Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the as-

This difference in statutory treatment appears to reflect a real-life distinction in the operations of the casualty and life insurance industries in Texas. Thus, a general life insurance agent does indeed act in a more restricted capacity than a local recording agent underwriting casualty insurance, although they both apparently have the power to initially bind the company to insurance risks.

■■ In the absence of such broad recording agent powers, it remains to appellant to prove that Agent Cockrell had the apparent or implied agency authority to waive the full-premium reinstatement requirement. Alternatively, she could show some direct action by the Insurer itself indicating such a waiver. But looking at the total circumstances of the periodic insurance transactions between appellant, Agent and Insurer, we find nothing to indicate that Agent had any such waiver authority.[14] Nor do we discern that the company itself directly waived the requirement. In the first reinstatement, Agent required appellant to pay the full arrearage due under policy # 2088313. The proper form was completed and the Insurer responded subsequently in accordance with contract provisions. The transaction at issue here was different—a far less substantial sum than the total arrearage was paid and a different form used.

It may well be that Mrs. Twitty reasonably relied on the statements of the agent that he "could get this policy back in force for her for $200.00," but we find no basis for her theory of promissory estoppel as against the Insurer.

Affirmed.

sured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy. Acts 1951, 52nd Leg., ch. 491.

14. For the purposes of this opinion, we consider it immaterial that the form actually used was the so-called Life Application. We treat it as though a Reinstatement Application had been signed.

